IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

BIOPOLYMERENGINEERING, INC.,    )
etc., et al.,                   )
                                )
         Plaintiffs and         )
         Counterdefendants,     )
                                )
    v.                          )    No.  07 C 4234
                                )
BIORGIN,                        )
                                )
         Defendant and          )
         Counterplaintiff.      )

                MEMORANDUM OPINION AND ORDER

    In this patent infringement action between patentee

Biopolymerengineering, Inc. d/b/a Biothera ("Biothera") and

Massachusetts Institute of Technology as plaintiffs and claimed

infringer Biorigin[1] ("Biorigin") as defendant, this Court set a

schedule for cross-presentations by the litigants to facilitate

an anticipated Markman determination construing any disputed

claim terms.  Both sides' counsel complied with that schedule and

then appeared at a February 11 status hearing, also preset by

this Court.[2]  It developed at that hearing that a potentially

dispositive determination might be made without delving into the

---

[1] This is the correct spelling and will be adhered to in this opinion, although a typographical error in the case caption refers to the name as "Biorgin."

[2] This Court had established that procedure to ascertain whether the parties' cross-responses had placed in issue everything necessary for Markman purposes or whether either or both sides believed that a third submission or cross-submissions was or were needed.

arcane mysteries of β glucan that occupied the bulk of the cross-submissions.

By way of brief explanation, it turns out that all but one of the patents in dispute have concededly expired--only U.S. Patent No. 6,143,731 (the "'731 Patent") remains in issue. And because the parties confirmed during the status hearing that no material (if any) damages are potentially involved in the case, a determination by this Court that the '731 Patent has also expired is likely to permit a prompt resolution of the case itself.

Patent expiration dates are prescribed by 35 U.S.C. §154(a)(2)("Section 154(a)(2)"):[3]

> Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed.

In this instance the critical dispute focuses not on the July 27, 1999 date of the application that ultimately matured in the '731 Patent, but rather on the October 28, 1988 date of Application Serial No. 07/264,091, which ultimately ripened into U.S. Patent 4,962,094. And in that respect it is undisputed that the application that led to the issuance of Patent '731 expressly

---

[3] All further references to Title 35's provisions will simply take the form "Section--."

claimed the benefit of that earlier October 1988 application (see Biorigin Mem. Exs. 26 and 27, signed by all three inventors).

Biothera R. Mem. at 6-7 seeks to escape the toils created by that unequivocal claim in the earlier application by invoking the provisions of the Manual of Patent Examining Procedure ("Manual" or "MPEP"), which sets out procedures for the Patent and Trademark Office's recognition of parties' efforts to obtain the benefit of earlier filing dates. But the Federal Circuit's view (as the Manual itself acknowledges) is that procedures set out in the Manual are not controlling--instead (as always) courts must look to the language of the statute itself.

Thus over two decades ago (coincidentally in the same year as the application that proves critical in this case) Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425 (Fed.Cir. 1988) (emphasis added) reflected that view:

> The MPEP states that it is a reference work on patent practices and procedures and <u>does not have the force of law</u>, but it "has been held to describe procedures on which the public can rely."

And something over a decade later Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374 (Fed. Cir. 1999) looked to the relevant statutory provision in reversing a District Court's grant of summary judgment that had looked to the Manual. As succinctly described in the dissenting opinion in Atmel (id. at

3

1384)[4]:

> I agree that the MPEP does not control here. Although "the Commissioner of Patents is vested with wide discretion to formulate rules and guidelines governing [the] use [of incorporation by reference], thereby to prevent its abuse," In re Hawkins, 486 F.2d 569, 573, 179 USPQ 157, 161 (CCPA 1973), these guidelines do "not have the force of law," Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425, 7 USPQ2d 1152, 1154 (Fed. Cir.1988). "[T]he courts are the final authorities on issues of statutory construction. They must reject administrative constructions of [a] statute...that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." Id. (quoting Federal Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981)).

Nor are those statements of that basic principle the sole authorities that call for the rejection of Biothera's position. Even more directly, in Abbott Labs. v. Novopharm Ltd., 104 F.3d 1305 (Fed. Cir. 1997) the Federal Circuit affirmed a decision in which this Court's colleague Honorable Charles Kocoras had held (38 U.S.P.Q. 2d 1309 (N.D. Ill. 1996)):

> Furthermore, we do not believe that Section 154(a)(2) requires a patent holder to have actually benefited from the continuing or divisional application. Section 154(a)(2) simply states that we should consider the term length from the earliest filing date "if the application contains a specific reference to an earlier filed application or applications under sections 120, 121, or 365(c)." Because it is clear that the later application specifically referenced the earlier, we believe that we should consider the '097 patent term as beginning on October 14, 1975, the date on which the original application was filed, and expiring on October 14, 1995, twenty years later (the longer option

---

[4] That dissent related to an issue not material to the present discussion.

4

provided under Section 154(c)(1)).

In rejecting essentially the same argument that is sought to be advanced by Biothera in this case, Abbott Labs., 104 F.3d at 1308 (footnote omitted) then had this to say after quoting Section 154(a)(2) and looking at the patent application there:

> Abbott's argument that it should not be bound by the earlier filing date because it received no benefit from the divisional application is not persuasive. The district court found that Abbott chose to designate its patent as divisional in order to receive the potential benefits associated with the earlier filing date. Abbott's choice to do so cannot be disregarded simply because it subsequently found that the later filing date would be more advantageous. Abbott must accept the consequences as well as the potential benefits of the divisional status of the '895 application.

During the February 11, 2009 status hearing, Biorigin's counsel submitted a previously-prepared "Citation of Additional Authority on Expiration of U.S. Patent 6,143,731," citing not only the District Court and Federal Circuit's opinions in Abbott Labs. but also Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc., 420 F.3rd 1364, 1366 (Fed.Cir. 2005). On February 25 Biothera filed its response, weighing in for the first time on the question of the expiration date of the '731 Patent. That response urges that Broadcast Innovation supports Biothera's position rather than Biorigin's.

But the fact remains that Broadcast Innovation dealt with a quite different issue from the one now before this Court and, in any event, found that a claim to priority was effective when it appeared in an oath and declaration. Most importantly, however,

5

the parties' debate over the thrust of that opinion cannot be permitted to obscure the total absence of ambiguity in the earlier-quoted statute, Section 154(a)(2). And of course this is an area in which--as in all areas covered by statute--Congress has the last word.

In sum, because Application No. 07/264,091 did indeed "contain[ ] a specific reference to an earlier filed application...under section 120, 121 or 365(c)," as Section 154(a)(2) frames the standard, that statute dictates that the '731 Patent expired 20 years after the October 28, 1988 date of the earlier application--on October 28, 2008. And because the parties' representations during the February 11 status hearing signaled that this ruling is potentially dispositive, a new status hearing is set for 8:45 a.m. March 5, 2009 to discuss the possible disposition of this action.[5]

                        _____
                        Milton I. Shadur
                        Senior United States District Judge

Date:  March 2, 2009

---

[5] This Court sees no need for out-of-town counsel to make the trip to Chicago to participate in that hearing. Instead it has set the 8:45 a.m. time to enable out-of-town counsel to participate telephonically if they so choose--but in that event they must arrange for and place a conference call for that purpose, rather than looking to this Court's minute clerk to make the necessary arrangements.